## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **JEFFREY D. DAHL AND KRISTIN L. DAHL, AS CO-TRUSTEES OF THE DAHL FAMILY REVOCABLE TRUST, DATED SEPTEMBER 27, 2019**, | Case No: 3:24-cv-336-jdp |
| Plaintiffs, | |
| v. | **DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** |
| **JAMES DEBRIYN**, | |
| Defendant. | |

Defendant James DeBriyn submits this Reply to Plaintiffs' Response in Opposition to Defendant's Motion for Sanctions.

### INTRODUCTION

Plaintiffs' Response in Opposition to Defendant's Motion for Sanctions, ("Plaintiffs' Opposition" or "Opp.," ECF No. 35) fails to adequately address the conduct warranting sanctions. Plaintiffs' counsels' emails and actions speak for themselves. Plaintiffs' Counsel misrepresented the applicable law to this Court. While this may have been a mistake, they decided not to alert the Court once they were aware of law directly adverse to their position and took actions that would conceal the truth. After achieving remand, and even though no reasonable attorney would believe they had a colorable claim due to the expired statute of repose, Plaintiffs' counsel threatened opposing counsel with the prospect of unnecessarily driving up

1

costs for the sole purpose of causing delay to manipulate jurisdiction and prejudice Defendant DeBriyn. This was an abuse of the legal system and a deception upon the Court.

## RESPONSIVE ARGUMENT

### I.    Timeline of Events: From Plausible Negligence to Malicious and Vexatious

Plaintiffs' counsel were unmistakably negligent when they filed their brief in opposition to Defendant's motion to sever. While that error was the catalyst, this motion is not about negligence. This motion is about Plaintiffs' counsels' objectively unreasonable actions and intent to misuse the legal system to cause delay and manipulate jurisdiction. Once Plaintiffs' counsel knew the correct legal authority (which was, at a minimum, directly adverse to the position they took in the briefing), they were required to act to protect the integrity of the Court. Plaintiffs' counsel did not just stay silent and lay low, instead, they also convinced the Grossi Defendants not to respond to the complaint until after this Court lost jurisdiction. Plaintiffs' counsel took what can only be understood as a studied disregard of the law and the integrity of the Court so the ruse would not be spoiled until it was too late.

After remand, Plaintiffs' counsels' emails make it clear that Plaintiffs were not interested in prosecuting their claims against the Grossi Defendants. Instead, Plaintiffs' counsel had one mission - cause delay until July 2024 when they believed Defendant DeBriyn would no longer be able to remove this case back to this Court. While ultimately unsuccessful, Plaintiffs refused to dismiss their frivolous claims against the Grossi Defendants and Plaintiffs threatened them with unnecessary legal costs if they attempted to be dismissed from the case before the gambit was complete. Apparently, the only thing that stopped Plaintiffs from being successful was Defendant sending formal discovery to the parties.[1] Plaintiffs finally dismissed the Grossi Defendants only

---

[1] (*See* DeBriyn Decl., 3, ECF No. 32-6 ("[DeBriyn] has sent me written discovery requests … I have stalled him as best I can but I cannot tell him no … My clients simply will not voluntarily

after they determined they did not want to bear the financial cost of a sanctions motion from the Grossi Defendants.[2]

## II.    Plaintiffs' Counsels' "Good Faith" Arguments

Plaintiffs' Opposition argues that Plaintiffs' counsel made good faith arguments regarding the statute of limitations as they relate to the claims against the Grossi Defendants. While Plaintiffs' counsel did put forth arguments regarding the statute of limitations to the Grossi Defendants; critically, they did not make these arguments to the Court. Here, the issue is not that they *could have* made an argument to this Court, the issue is that they chose not to - even after they were aware of law directly adverse to the position they took in their briefing. Counsels' duty to the Court is not complicated, lawyers must acknowledge existing controlling law and may not choose to ignore it. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987); *see also In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) (discussing sanctions in the context of Rule 11, "This court, however, has required that the party against whom sanctions would be imposed must actually make the reasonable argument, not merely assert after-the-fact that a reasonable argument could have been made (even if the party didn't make it)."). Plaintiffs were free to state to this Court why they believed the statute was

---

agree to incur the expense of that discovery. As a result, we either have to be dismissed or, if we have to go through with the discovery, we will file a motion for summary judgment and, at the same time, send you a safe harbor letter and file a motion for sanctions as a follow-up to the safe harbor letter we already sent you. We are not trying to be difficult but our position remains what it has already been. We are perfectly willing to sit here for a short period of time until you will dismiss us in July when it works out on your end of things. We are not willing to incur expense and to inconvenience our clients. That is exactly what we are being forced to do."))

[2] Plaintiffs' Opposition explains that the "voluntary dismissal of the added defendants was in large part due to the anticipated costs of litigating multiple claims against multiple defendants as well as the likelihood of defending against an early motion for summary judgment by the nondiverse defendants." (Opp., 8, ECF No. 35) While that sounds reasonable, their emails tell the story differently.

inapplicable, but were not free to ignore a statute that was directly adverse to the position they took in their briefing.

The argument Plaintiffs actually made to this Court was that the applicable statute of limitations was three years under § 100.18 which is explicitly listed as abrogated as to real estate agents and brokers under § 452.142. Plaintiffs' Opposition does not meaningfully address this defect or the far more important issue that once they were made aware of adverse controlling law, they failed to notify the Court.[3] It was this critical time when their actions went from plausibly negligent to reckless or intentional.

Despite not making these arguments to the Court, Plaintiffs' Opposition asserts that they had two arguments that § 452.142 did not foreclose recovery against the Grossi Defendants, but neither of these arguments have merit. First, counsel stated that the two year period in § 452.142 runs from 'discovery,'[4] and second, Plaintiiffs' counsel argued that § 452.142 does not apply in

---

[3] Plaintiffs go as far as to suggest Defendant should be blamed for not raising the issue of the statute of limitations of the claims against different parties in his brief. (See Opp., n.4, ECF No. 35 ("DeBriyn did not raise any potential statute of limitations issues during briefing on the motion to sever.")). This was not Defendant's burden, and "[c]ounsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989). Nevertheless, it bears repeating that the substance giving rise to this motion for sanctions under § 1927 began once Plaintiffs' counsel were made aware they had misstated the law, not when the brief was filed. While Defendant agrees Plaintiffs failed to complete adequate investigation into the law before filing, this is not a motion under Rule 11 and Defendant did not argue that the initial filing was intentionally deficient.

[4] Plaintiffs' Opposition cites *Hansen* for the proposition that the limitation period for tort actions runs from 'discovery,' but this argument was specifically rejected decades ago by the Wisconsin Supreme Court. *Tomczak v. Bailey*, 578 N.W.2d 166, 173 (Wis. 1998) ("We hold that the judicially-created *Hansen* discovery rule cannot be applied to a statute of repose."). Defendant does not agree that arguments explicitly rejected by the Wisconsin Supreme Court can be made in good faith - whether by Plaintiffs' counsel to unrepresented parties via email, or in Plaintiffs' Opposition for purposes of this motion.

cases of fraud.[5] These two arguments are meritless and were addressed and disposed of in Defendant's brief. (Defendant's Memorandum in Support of Motion for Sanctions, 5 n.3, 16-17, ECF No. 31) Any reasonable attorney would have recognized that the plain language of § 452.142 was adverse (if not wholly dispositive) to Plaintiffs' claims against the Grossi Defendants and the position they took in their argument to this Court.[6]

### III.    Unlike *Stockbridge-Munsee*, Plaintiff's Counsels' Actions Went Beyond Negligence

Plaintiffs cite *Stockbridge-Munsee* to argue that this situation is similar because "perpetually altering their line of argument as the moment suits them," and making a "last-ditch effort to save the case" that was of "questionable merit," did not rise to an "objectively unreasonable decision" and did not "significantly prolong or complicate the litigation." (Opp., 5-6, ECF No. 35, *quoting Stockbridge-Munsee Cmty. v. Wisconsin*, No. 17-CV-249-JDP, 2018 WL 708389, at *5 (W.D. Wis. Feb. 2, 2018), aff'd, 922 F.3d 818 (7th Cir. 2019)). While Defendant agrees that Plaintiffs' arguments lack merit and that Plaintiffs have a pattern of

---

[5] Plaintiffs' Opposition defends the argument made in an email from March 23, 2024, that fraud is not covered by § 452.142. (Opp., 7, ECF No. 35) While this legal argument is also frivolous, this is the same email where Plaintiffs' counsel also confirmed that, "our goal is not to have protracted litigation with your client about potential fraud or anything else." (DeBriyn Decl., 2, ECF No. 32-5) The purpose of the email was not to make a good faith argument, but rather to convince the Grossi Defendants to "consider holding off on a SJ filing and I will then not seek to amend the complaint, both of which things will just cause significant expense." (*Id.* at 3) In exchange for not filing a motion, Plaintiffs' Counsel promised that "if your clients are patient for the moment all of that will be avoided." (*Id.*)

[6] While Plaintiffs' Opposition points out that the *Eddings* case discussing § 452.142 was decided after the Grossi Defendants were dismissed (a fact that Defendant acknowledged as well), *Eddings* demonstrates what any reasonable attorney should recognize - the statute is "simple." *Eddings v. Est. of Young*, 2024 WI App 60, ¶ 11, 13 N.W.3d 269, 273 (agreeing with the circuit court that "the clear language of [§] 452.142 is that the Wisconsin legislature intended that real estate professionals be free from all liability for acts and omissions while providing brokerage services two years after the closing."). *Eddings* provides an objective benchmark as to the credibility of Plaintiffs' claims to the contrary.

5

adopting and discarding legal theories,[7] Defendant disagrees that Plaintiffs' gamesmanship did

not significantly prolong this matter.[8] The original trial date in this case, was set for October 28,

2024, but because of Plaintiffs' counsels' actions, trial is now set for nearly a year later on

September 8, 2025. (Prelim. Pretrial Conf. Order, 90, ECF No. 1-1; Prelim. Pretrial Conf. Order,

6, ECF No. 5) Critically, the very purpose of Plaintiffs' chicanery was to cause delay in this case

to permanently, and unreasonably, deprive Defendant of his right to defend himself in this forum.

In *Stockbridge-Munsee*, this Court explained that "Stockbridge-Munsee's arguments are

borderline, but the court does not want to punish unsuccessful but good-faith advocacy."

*Stockbridge-Munsee* at *1. Unlike in *Stockbridge-Munsee*, Plaintiffs' counsel did not only make

dubious legal claims or simply act negligently. Plaintiffs' counsels' own emails show they acted

intentionally to distort the legal system to delay these proceedings for a tactical advantage.

Furthermore, Plaintiffs' counsels' arguments and actions at issue in this motion were not visible

to the Court.

---

[7] Defendant agrees that Plaintiffs have jumped from legal theory to legal theory - whether in filings to this Court or in other communications - without regard to legal authorities clearly contrary to their claims. *See, e.g., Burda v. M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993) (upholding sanctions under §1927 when counsel was "confronted with undisputable statutory authority and case law" and "ignor[ing] all of the cogent legal authority establishing that the suit was frivolous"); *see also Terese F. v. Saul*, 387 F. Supp. 3d 874, 876 n.2 (N.D. Ill. 2019) ("The technique of brief writing that puts out of view the existence of principles and/or cases that are central to a meaningful analysis has been rejected by the Seventh Circuit.") (citations omitted).

[8] Plaintiff's Opposition makes it sound like the case progressed while on remand, stating, "In the brief three-month period this case was in state court, the parties engaged in written discovery." (Opp., 8, ECF No. 35) This is misleading because the written discovery Plaintiffs are referring to was not sent by Defendant until April 30, 2024, and Plaintiffs did not respond until after the second removal. The reality was that Plaintiffs' counsel were trying to add months of delay and prevent the case from progressing during remand. (*See, e.g.,* DeBriyn Decl., 2, ECF No. 32-5 (Plaintiffs were "basically seeking the status quo - no filings or arguments or hearings for just a couple of months…"))

Plaintiffs' Opposition also attempts to distinguish *Phillips*. (Opp., 8-9, ECF No. 35) Plaintiffs argue that, unlike plaintiffs' counsel in *Phillips*, they "had a good faith belief that the Dahls had a viable claim against the nondiverse defendants" and that "there was no agreement to dismiss Plaintiffs' claims" against the nondiverse defendants. (Opp., 9, ECF No. 35) At best, Plaintiffs' counsel were negligent in their belief that Plaintiffs had a viable claim against the nondiverse defendants - at least until that ignorance was shattered when informed of the error. Critically, it was bad faith not to correct their filing and it was bad faith to press claims that were objectively unreasonable for the stated purpose of causing delay in this case for a tactical advantage. Also, contrary to their statement in  Plaintiffs' Opposition, Plaintiffs' counsel certainly appeared to have an agreement whereby the nondiverse defendants would be dismissed if they waited until after the removal deadline had passed. (*See, e.g.,* DeBriyn Decl., 3, ECF No. 32-6 ("We are perfectly willing to sit here for a short period of time until you will dismiss us in July when it works out on your end of things."))

### IV.     Counsel's Subjective Intent to Multiply These Proceedings

While Defendant believes that Plaintiffs' legal arguments against the Grossi Defendants were not objectively colorable in light of § 452.142, Plaintiffs' counsels' emails show that the subjective component of § 1927 was also met. Plaintiffs' counsels' emails showed their intent was not to prosecute their claims in good faith, but rather to threaten to drive up costs and cause delay for a tactical advantage. *See In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) ("A lawyer who pursues a plausible claim because of the costs the suit will impose on the other side, instead of the potential recovery on the claim, is engaged in abuse of process."); *see also Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006) ("Subjective bad faith must be shown only if

the conduct under consideration had an objectively colorable basis."). Plaintiffs' Opposition does not dispute or otherwise address Plaintiffs' counsels' subjective intent, choosing instead to focus solely on whether their out of court arguments were colorable. Failing to respond waives any argument to the contrary. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument...results in waiver.").

## CONCLUSION

In Plaintiffs' view, this motion is about "a three-month period early in this litigation when the parties were in the process of sorting out the legal, procedural, and factual issues in the case and the forum where the dispute should be heard." (Opp., 9, ECF No. 35) Defendant disagrees and worries that Plaintiffs' Opposition treats this as normal litigation practice and fails to appreciate the seriousness of this matter. This motion is about Plaintiffs' counsels' obligations to the courts, obligations to opposing parties, the waste of valuable court time, wasted fees, and for causing nearly a year in unnecessary delay. In essence, Plaintiffs' Opposition argues that the ability to articulate an out of court argument, even if wholly without merit, negates their decision to deceive the Court and litigate against one party for the purpose of prejudicing another party - without taking any responsibility for the consequences of their actions.

Dated this 25th day of June, 2025.

Respectfully submitted,

*/s/ James DeBriyn*
James DeBriyn

8