IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY D. DAHL AND KRISTIN L. DAHL, AS
CO-TRUSTEES OF THE DAHL FAMILY
REVOCABLE TRUST, DATED SEPTEMBER 27,
2019,

                       Plaintiff,

  v.

JAMES DEBRIYN,

                       Defendant.

OPINION and ORDER

24-cv-336-jdp

---

      This case involves a dispute over the width of an easement to access plaintiff Jeffrey and Kristin Dahl's property in Cable, Wisconsin. Defendant James DeBriyn owns the neighboring property on which the easement is located. The terms of the easement do not describe its width, but currently there is a ten-foot-wide dirt driveway along the length of the easement that can be used to access the Dahl property from the road. The Dahls seek to expand the width of the driveway to bring it into compliance with a Town of Cable ordinance setting a minimum width for private driveways. Without that change, the Dahls cannot build a residence on their lot. DeBriyn refused to allow the Dahls to widen the driveway, so the Dahls brought this lawsuit seeking a declaratory judgment that the easement allows them to widen the driveway to comply with the town ordinance.

      Two motions are before the court. First, DeBriyn moves to sanction the Dahls' counsel, contending that they failed to disclose directly adverse law to get the case remanded to state court. The court will grant the motion. DeBriyn has adduced persuasive evidence that the Dahls' counsel was aware of and failed to disclose law fatal to their position that the case should be remanded.

Second, the parties have filed cross-motions for summary judgment. The court will grant the Dahls' motion for summary judgment and deny DeBriyn's. The easement contains an implied right to widen the driveway because the Dahls need to do so to reasonably enjoy their property. And laches does not bar the Dahls' claim because the Dahls did not unreasonably delay in asserting their claim, nor has DeBriyn shown any prejudice.

UNDISPUTED FACTS

The following facts are undisputed.

Plaintiffs Jeffrey and Kristin Dahl and defendant James DeBriyn own neighboring property in the Town of Cable in northern Wisconsin. The Dahl property was created in 1990, when DeBriyn's grandparents sold a portion of their property to Joseph Gosnell III, along with an easement for ingress and egress. A map of the properties is shown below. The red line is the easement, which goes from East Cable Lake Road to the Dahl property.



2

The deed conveying the easement described it as follows:

> Together with an easement for ingress and egress to the above property, described as follows:
>
> Commencing at the C 1/16 Northeast corner of said Section 1; thence North 0° 19' 37" West, 136.09 feet to point "A" and the Point of Beginning; thence continuing North 0° 19' 37" West, 660.04 feet to the Southwest corner of the Gosnell property; thence returning to point "A" and bearing South 69° 39' East, 101.57 feet; thence North 44° 19' East 248.1 1 feet; thence North 50° 06' East, 130.41 feet to point "B"; thence North 9° 10' East, 286.05 feet; thence North 28° 53' 30" East, 171.20 feet to a point on the South line of the Gosnell property; thence returning to Point "B" and bearing South 9° 10' West, 235.91 feet; thence South 79° 13' East 349.76 feet; thence North 73° 49' East, 191.70 feet; thence South 44° 37' East 118.20 feet; thence North 86° 00' East, 132.90 feet; thence North 62° 30' East 170.45 feet; thence South 26° 57' East, 160.65 feet; thence South 64° 23' East 294.10 feet; thence South 36° 31' East, 274.16 feet to the centerline of the East Cable Lake Road.

Dkt. 11-3, at 2. The length of the easement is 2,300 feet. The terms of the easement do not specify a width, but when the easement was created, there was a ten-foot-wide dirt driveway along its entire length, which remains in place today. A picture of the driveway at a point midway along the easement is included below. (The image contains a ten-foot-wide wooden board, which was placed there by DeBriyn when he took the picture.)



Gosnell, the original owner of the Dahl property, died in 2000. Shortly thereafter, the Gosnell estate commissioned a survey of the Dahl property and the easement, which was conducted by registered land surveyor Frederic Zietlow of Apex Surveying. (The parties refer to this survey as the "Apex survey.") The Apex survey describes the easement as being 33 feet wide.

The Dahls bought the parcel in March 2021, intending to build a permanent residence on it. But to do so, the Dahls need to bring the driveway into compliance with a Town of Cable ordinance regulating private driveways and roads. The ordinance, which was passed in 2006 and amended in 2023, requires that private driveways have a minimum drivable width of 12 feet, with 24 feet of clearance from branches or other obstructions as measured from the center of the travel surface. Town of Cable Ordinance 26A, §§ 5a–5b (amended 2023). For driveways longer than 300 feet, wider segments at least 25 feet in length and 18 feet in width must be provided at least every 150 feet to allow vehicles traveling in opposite directions to pass each other. *Id.* § 5f. Any sections of a private driveway that serve more than one parcel are considered private roads instead of driveways; private roads must be 22 feet wide with a minimum 50 feet of clearance. *Id.* §§ 5a–5b. Property owners with a private driveway may not build a structure or otherwise improve their parcel unless the driveway complies with the ordinance. *Id.* § 4c.

In November 2021, the Dahls sent a letter to DeBriyn indicating that they intended to widen the driveway to comply with the town ordinance. DeBriyn refused to allow the Dahls to widen the driveway, so the Dahls filed this case in state court in Bayfield County. DeBriyn removed the case to this court, citing 28 U.S.C. § 1332. The court initially remanded the case to state court because there was not complete diversity between the parties then involved in the case. But the parties later stipulated to the dismissal of the non-diverse defendants and

4

DeBriyn again removed the case to this court. This court has jurisdiction over this case under 28 U.S.C. § 1332. The Dahls are citizens of Wisconsin and DeBriyn is a citizen of Arizona, so the parties' citizenship is diverse. Dkt. 29, ¶¶ 1–2. The amount in controversy is greater than $75,000 because if the Dahls cannot widen the easement and build a residence on the property, their property value would decrease by at least $89,000. *See* Dkt. 1-5 (declaration of real estate broker Cathy Midwood, filed with notice of removal); *see also Am.'s MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004) (when declaratory judgment is sought, amount in controversy is the value to the plaintiff of the declaratory judgment).

ANALYSIS

Two motions are before the court. First, DeBriyn moves for sanctions against the Dahls' counsel under 28 U.S.C. § 1927 and this court's inherent authority. Second, the parties have filed cross-motions for summary judgment.

**A. Motion for sanctions**

DeBriyn moves to sanction the Dahls' counsel under 28 U.S.C. § 1927 and this court's inherent authority, contending that counsel knowingly failed to disclose law directly adverse to their position before this court remanded this case to state court in 2024. DeBriyn asks for $405 in sanctions, which is equal to his costs for having to remove this case a second time. (DeBriyn does not seek attorney fees because he is serving as his own attorney.)

The facts underlying the sanctions motion are as follows. DeBriyn first removed this case from state court in August 2023. *See* case no. 23-cv-552-jdp. In October, the Dahls filed an amended complaint, adding claims for fraud and breach of contract against their real estate

5

broker John Grossi and his firm.[1] *Id.* Dkt. 7. Adding Grossi to the case destroyed complete diversity, so DeBriyn moved to sever Grossi to maintain diversity jurisdiction. In opposition to the motion to sever, the Dahls asserted that they were not adding Grossi merely to defeat diversity jurisdiction. Instead, they said that they were adding Grossi because their claims for fraudulent misrepresentation under Wis. Stat. § 100.18 had a three-year statute of limitations, so they needed to add Grossi to the case before the limitations period ended. *Id.* Dkt. 12, at 7 n.3.

While the motion to sever was pending, Grossi's counsel contacted the Dahls' counsel, informing them that their claims under Wis. Stat. § 100.18 were already time-barred by Wis. Stat. § 452.142, which imposes a two-year statue of repose on all claims related to real estate brokerage services. Dkt. 32-1–32-2. Section 452.142 directly foreclosed the argument the Dahls made in their response brief to the motion to sever, but the Dahls' counsel did not disclose that to the court.

In February 2024, this court remanded the case to state court, relying in part on the Dahls' assertion in their brief that they had meritorious claims against Grossi. *Id.* Dkt. 16. In March, Grossi's counsel and the Dahls' counsel negotiated about dismissing Grossi. Grossi's counsel wanted the Dahls to stipulate to dismiss Grossi; the Dahls' counsel agreed that Grossi would be dismissed but requested that he remain in the case for a few more months while the Dahls attempted to resolve the case directly with DeBriyn. At one point, Grossi's counsel told the Dahls' counsel that he "underst[ood] that you want to put [dismissing Grossi] off . . . till

---

[1] The Dahls also added claims against Mark Avery and Ellen Heritage, the previous owners of the Dahl property. But Avery and Heritage were not Wisconsin citizens, so their presence in the case did not destroy complete diversity. They are not relevant to the sanctions motion.

removal rights end in July." Dkt. 32-5. The Dahls' counsel responded that the Dahls were "basically seeking status quo" from Grossi—"no filings or arguments or hearings for just a couple of months while we attempt mediation with DeBriyn." *Id*. Grossi's counsel agreed to this. But the next month, DeBriyn served discovery on Grossi. Grossi's counsel told the Dahls' counsel that DeBriyn had "called your bluff" and asked the Dahls to immediate stipulate to dismissing Grossi so that he did not have to respond to discovery. Dkt. 32-6. The Dahls agreed to the dismissal in early May 2024. Shortly thereafter, DeBriyn once again removed the case to this court.

DeBriyn asks for sanctions under 28 U.S.C. § 1927 and this court's inherent authority to sanction. 28 U.S.C. § 1927 authorizes sanctions when a party's counsel delays litigation by engaging in "objective bad faith," or in other words, when counsel "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Bell v. Vacuforce, LLC*, 908 F.3d 1075 (7th Cir. 2018). The statue imposes an ongoing duty on an attorney to dismiss litigation after an attorney knows, or should have known, that a claim is no longer viable. *See Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985) ("dogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail.") The standard for imposing sanctions under the court's inherent authority is similar: the court must find that the attorney "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Vega v. Chicago Bd. of Educ.*, 109 F.4th 948 (7th Cir. 2024). The court must find bad faith by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 779 (7th Cir. 2016).

The court concludes that sanctions are warranted. The evidence shows that the Dahls' counsel knew that the claims against Grossi were barred by Wis. Stat. § 452.142, but intentionally withheld that information so that the court would remand the case. The Dahls' counsel undisputedly knew that the argument they had made to the court in response to the motion to sever lacked merit before the court ruled on that motion. But counsel did not disclose that § 452.142 was directly adverse to their position, in violation of their ethical obligation under Wisconsin Supreme Court Rule 20:3.3. And once the case was remanded to state court, counsel convinced Grossi to remain in the case with "no filings or arguments or hearings for just a couple of months." Dkt. 32-5. Counsel may have simply been attempting to simplify things while they negotiated with DeBriyn, but counsel's focus on Grossi remaining in the case until "July" suggests that the primary reason was to prevent DeBriyn from removing the case again, because July was when DeBriyn's right to remove the case would expire.

In their response brief, Dkt. 35, the Dahls argue that counsel had a good faith belief that § 452.142 did not bar all their claims against Grossi, because they could have brought a fraud claim against him and § 452.142 does not explicitly override the three-year statute of limitations for fraud claims under Wis. Stat. § 893.93(1m)(b). That argument is difficult to square with the plain language of § 452.142, which imposes a two-year statute of repose on all actions based on acts or omissions of a real estate broker. But even if counsel believed in good faith that § 452.142 did not bar all their claims against Grossi, that belief rested on a different theory than the brief they submitted to this court. Counsel knew that the arguments they had made to the court were foreclosed by § 452.142. Their failure to disclose that is further evidence that they did not truly believe they had a meritorious case against Grossi, but wanted to avoid dismissing him until DeBriyn's window to remove the case expired.

8

The Dahls also argue that sanctions are inappropriate because any prejudice to DeBriyn has been minimal: DeBriyn was able to remove the case again and the first removal only delayed the case by a few months. The court agrees that the prejudice is modest. But DeBriyn is seeking only a modest sanction: he wants counsel to pay $405, his costs for having to remove the case a second time. That is a fair sanction in light of counsel's conduct. The court will grant DeBriyn's motion and order counsel in the '552 case to pay DeBriyn $405.

## B.  Summary judgment

The parties have filed cross-motions for summary judgment on the issue whether the easement allows the Dahls to widen their driveway. The Dahls seek a declaratory judgment that the easement allows them to widen their driveway to comply with the minimum width requirements set by the town ordinance. DeBriyn contends that the easement does not allow widening of the driveway and that even if it does, the Dahls' claim is barred by the doctrine of laches.

### 1.  Interpretation of the Dahl easement

An easement is an interest in land possessed by another. *Atkinson v. Mentzel*, 211 Wis. 2d 628, 637, 566 N.W.2d 158 (Ct. App. 1997). An easement creates two property interests: the dominant estate, which enjoys the privileges of the easement, and the servient estate, which permits the exercise of the privileges. *Id.* An easement gives the owner of the dominant estate the right to use the servient owner's property for a specified purpose. *Hunter v. McDonald*, 78 Wis. 2d 338, 254 N.W.2d 282 (1977); *Konneker v. Romano*, 2010 WI 65, ¶ 25, 326 Wis. 2d 268, 785 N.W.2d 432. Because an easement confers only limited property rights, the owner of the dominant estate must confine his use of the easement to the purposes specified in the

easement grant; uses other than those allowed by the easement are trespass. *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, 328 Wis. 2d 436, 787 N.W.2d.

The Dahl easement is an express easement, meaning that it was created via a written grant in a deed. As with other written instruments, the court interprets a deed to ascertain the intent of the parties who created it. *Konneker* 2010 WI 65, ¶ 26. The court starts with the language of the deed itself; if the language is ambiguous, then the court may consider extrinsic evidence of intent. *Id.*

In this case, the Dahl property is the dominant estate and the DeBriyn property is the servient estate. The easement allows the Dahls to use a portion of the DeBriyn property for "ingress and egress" to the Dahl property. The central question is whether the Dahls' right of ingress and egress includes a right to widen the private driveway to comply with a town ordinance.

The parties agree that the terms of the deed itself are ambiguous on the question of widening the easement. The deed does not identify the width of the easement. DeBriyn argues that the original parties intended the easement to be limited to ten feet because they wrote the easement to track an existing ten-foot-wide dirt driveway. DeBriyn is correct that the "practical construction given to [an easement] by the acts of the parties" is among the strongest extrinsic evidence of intent. *Berg v. Ziel*, 2015 WI App 72, ¶ 14, 365 Wis. 2d 131, 870 N.W.2d 666. The original parties to this easement decided to have the easement's location overlap with an existing driveway, which is strong evidence that they intended that driveway to be the access route to the Dahl property. But that doesn't answer the question whether they intended to allow the driveway to be widened if local law required it.

10

The Dahls provide three reasons why the court should interpret the easement to allow the driveway to be widened. The first two reasons are related to the original parties' intent. The Dahls' assert that a provision in the land contract between DeBriyn's grandparents and Gosnell required Gosnell to comply with all laws affecting the property, which the Dahls ague is evidence that the parties intended the easement's boundaries to change over time to comply with local ordinances. The Dahls also assert that the 2001 Apex survey, which lists the easement as being 33 feet wide, is evidence that the original parties intended the access route to be wider than ten feet.

The Dahls' arguments about the parties' intent are unpersuasive. The land contract isn't helpful evidence of the parties' intent for the width of the easement because the contract was only in effect between October 1989 and September 1990, when it was fulfilled with the execution of the deed. The private driveway ordinance didn't exist until 2006. No ordinance required Gosnell to change the width of the easement in 1989 or 1990 when the land contract was in effect, and nothing in the land contract imposed a continuing obligation to maintain the property in compliance with local ordinances after the execution of the deed. As for the Apex survey, it was commissioned by Gosnell's estate more than ten years after the deed was executed; neither of the original parties to the deed were involved in the survey, so it says nothing about what those parties understood the easement's width to be.

The Dahls' third reason is that even if the original parties intended the easement to be the same width as the existing dirt driveway, changed circumstances justify modifying the easement. Under Wisconsin law, all easements contain an implied right to modify the easement in ways reasonably necessary to enjoy it for its intended use, as long as the deed does not expressly foreclose such modifications and the modifications will not unreasonably burden the

11

servient estate. *Konneker* 2010 WI 65, ¶ 26; *Atkinson v. Mentzel*, 211 Wis. 2d 628, 640–41, 566 N.W.2d 158 (Ct. App. 1997). The Dahls argue that widening the driveway to comply with the ordinance is reasonably necessary for them to enjoy their right of ingress and egress to their property. DeBriyn counters that widening the easement is not necessary to access the Dahls' property; he also argues that widening the driveway unreasonably burdens his property.

Wisconsin courts have taken a narrow view of what is reasonably necessary to enjoy an easement for its intended use. Courts may not modify an easement simply to produce a fairer result, to promote economic efficiency, or to preserve property values. *AKG Real Est., LLC v. Kosterman*, 2006 WI 106, ¶ 20, 296 Wis. 2d 1, 717 N.W.2d 835 ("Even at the risk of sanctioning unneighborly and economically unproductive behavior, this court must safeguard property rights."). Courts also may not expand the scope of an easement: any modifications must be strictly confined to the uses granted to the dominant estate by the deed. *Hunter v. Keys*, 229 Wis. 2d 710, 717–18, 600 N.W.2d 269 (Ct. App. 1999). DeBriyn argues that widening the driveway in this case would expand the scope of the easement beyond what was granted in the deed. He points out that the Dahls admit that they can access their property using the current driveway, so widening it is not necessary for "ingress and egress," which is all the Dahls are allowed to do according to the deed. The Dahls counter that widening the driveway is directly related to their access rights to the property, so any modifications are well within the scope of the easement.

*Hunter v. Keys* is instructive. As in this case, the easement holder in *Hunter* held an easement for "ingress and egress" to his property. The easement holder sought to fill wetlands on the servient estate to build a road to his property and to install underground cable underneath the road for telephone and electricity across the easement. 229 Wis. 2d at 714.

12

The court allowed the easement holder to fill wetlands to build a road, reasoning that doing so was directly related to the easement holder's right of ingress and egress. *Id.* at 715–16; 719 ("the grant of an access and egress easement necessarily implies the right to create and maintain a suitable access way"). But the court did not allow the installation of utility cables, holding that utility service was outside the scope of the easement. *Id.* at 717–18. The court reasoned: "The terms of the easement are specific and limited. The easement grants access and egress. The fact that the easement was not sufficiently broad to allow [the easement holder] to do what he wishes with the property does not redefine the easement's scope." *Id.* at 718.

DeBriyn's view is that widening the driveway in this case is like installing utility cables in *Hunter*: it may be necessary for the Dahls to build a residence, which is what they want to do with the property, but it is not strictly necessary for ingress and egress, which is the sole purpose of the easement. The court disagrees. The Dahls are not attempting to expand the scope of their easement beyond ingress and egress. An ingress and egress easement implies ingress and egress for a reason. The Dahls' parcel is zoned for residential use and neither side asserts that it has any purpose other than as a residential property. The current access route is unsuitable for a residential parcel because it doesn't comply with the town ordinance, so the owners cannot get a permit to build a residence. The modifications the Dahls want to make are necessary to maintain a suitable access route to a residential parcel, so they fall squarely into the rule that an easement can be modified in ways reasonably necessary to use the easement for its intended purpose.

As for whether widening the road unreasonably burdens DeBriyn's property, DeBriyn contends that the project will require removing hundreds of trees and bulldozing significant portions of his land. It is undisputed that widening the entire 2,300-foot length of road would

13

require removing hundreds of trees. But DeBriyn has not explained why that amounts to an unreasonable burden. DeBriyn offers the conclusory assertion that removing so many trees will materially change the character of his property, but it's not clear why that is based on the facts of this case. The driveway the Dahls seek to widen is in a large, forested area a substantial distance from DeBriyn's residence. DeBriyn has not explained how removing a few feet of trees along the length of a driveway in the middle of a forest will change the character of the property, which will remain a largely undeveloped forest even with the expanded driveway.

DeBriyn contends that expanding the driveway is an unreasonable burden as a matter of law because it consumes a portion of his property that was not formerly part of the easement. Dkt. 18, at 19. DeBriyn cites *Northwest Pipeline Corporation v. Luna*, 241 P.3d 945 (Idaho 2010), in which the Idaho Supreme Court held that a pipeline company could not unilaterally expand its pipeline easement to accommodate new safety guidelines that were not in place when the easement was created. The court reasoned that the easement had to be construed based on the "circumstances in existence at the time the easement was given," and that, although the pipeline company could make reasonable alterations to the easement to accommodate changing circumstances, it could not enlarge the easement, because that would "envelop[] additional lands" belonging to the servient estate. *Id.* at 948. But *Northwest Pipeline Corporation* is not controlling in this case. Wisconsin courts have not adopted the rule that easements must be construed based on the "circumstances in existence at the time the easement was given;" on the contrary, Wisconsin courts have repeatedly held that easements can be modified when reasonably necessary to accommodate changed circumstances. *Scheeler v. Dewerd*, 256 Wis. 428, 432, 41 N.W.2d 635 (1950); *Atkinson*, 211 Wis. 2d at 640; *Mnuk v. Harmony Homes, Inc.*, 2010 WI App 102, ¶¶ 36–40, 329 Wis. 2d 182, 790 N.W.2d 514; *In re. Garza*, 2017 WI 36,

¶¶ 39–40. Nor have Wisconsin courts adopted an exception to the modification rule preventing easements from being expanded. The general test still applies: modification is allowed if it is reasonably necessary to accomplish the easement's purpose and does not unreasonably burden the servient estate. The court has concluded that widening the driveway is reasonably necessary for the Dahls to enjoy their access easement and does not unreasonably burden DeBriyn's property. So under Wisconsin law, the Dahls may widen their driveway to comply with the town ordinance.

### 2. Laches

DeBriyn contends that the Dahls' claim to widen the easement is barred by the doctrine of laches. Laches is an affirmative, equitable defense that bars relief when a claimant's failure to promptly bring a claim prejudices the party having to defend against the claim. *Wisconsin Small Businesses United, Inc. v. Brennan*, 2020 WI 69, ¶ 11, 393 Wis. 2d 308, 946 N.W.2d 101. To apply laches, DeBriyn must show that: (1) the Dahls unreasonably delayed in bringing their claim; (2) DeBriyn lacked knowledge that the Dahls would raise that claim; and (3) DeBriyn is prejudiced by the delay. *Id.* ¶ 12.

Laches does not apply here because DeBriyn cannot establish that the Dahls unreasonably delayed or that he has been prejudiced. As for unreasonable delay, it is undisputed that the DeBriyns raised the issue of widening the driveway with DeBriyn shortly after they bought the property in 2021 and filed this lawsuit less than two years later. DeBriyn agrees that the Dahls acted promptly, but he argues that the Dahls should be penalized for their predecessors' failure to raise the issue of the driveway's width in the 18 years since the driveway ordinance was passed.

DeBriyn points to a case in which the Wisconsin Supreme Court applied laches based on the failure of a plaintiff's predecessor to bring a claim. *Sable v. Maloney*, 48 Wis. 331, 4 N.W. 479 (1880) (claim of mistake in a deed was barred by laches when plaintiff's predecessor had not raised the issue). But in *Sable*, the plaintiff's predecessor had affirmatively raised the issue of the mistake in the deed with the defendant shortly after the deed was executed; he had then let the matter drop for 15 years. *Id.* The court relied on his knowledge of the problem and "virtual acquiescence" to the defendant's position in determining that the delay was unreasonable. *Id.* Here, there is no evidence that any of the Dahls' predecessors knew about the ordinance or had ever raised the issue of the driveway's width; they would not necessarily have come across the ordinance if they had not attempted to improve the property. The court is not aware of any authority in the nearly 150 years since *Sable* holding that a plaintiff unreasonably delays in bringing the claim if their predecessor was not aware of any claim or interested in pursuing it. The Dahls promptly asserted their claim after they acquired their parcel, so the court concludes that they did not unreasonably delay.

Further, even if the Dahls had unreasonably delayed, the court would not apply laches because DeBriyn has not shown prejudice. DeBriyn argues that he is prejudiced because the original parties to the easement are deceased, so they cannot testify to their intent about the easement's width. But the court's ruling for the Dahls is not based on the parties' intent, but on Wisconsin's rule for modifying easements based on changed circumstances. The testimony of the deceased witnesses would not change the court's conclusion on that issue.

C.  **Next steps**

The court concludes that the Dahls' easement allows them to widen their driveway to meet the minimum width required by the town's private driveway ordinance, so the court will

16

grant the Dahls' motion for summary judgment and deny DeBriyn's. The court's decision resolves the declaratory judgment claim, which is the only claim remaining in this case because the Dahls have voluntarily withdrawn their interference with interest claim and their request for damages. *See* Dkt. 14, at 18 n.5. All pretrial deadlines and the trial date will be struck.

The remaining issue is the terms of the declaratory judgment. The parties agree that the expansion of the driveway must be limited to the minimum necessary to comply with the town's ordinance, but their briefing suggests some disagreement on what that entails. *E.g.*, Dkt. 18, at 14–17 (arguing that the ordinance does not require the Dahls to pave the property). The court will give the parties until August 8, 2025, to submit a joint proposed judgment consistent with this order. If the parties disagree on the terms of the judgment, they should submit alternative proposals along with short briefs explaining their reasoning.

### ORDER

IT IS ORDERED that:

1. Defendant James DeBriyn's motion for sanctions, Dkt. 30, is GRANTED. DeBriyn is awarded $405 under 28 U.S.C. § 1927, to be paid by the Dahls' counsel in case no. 23-cv-552-jdp as a sanction for failing to disclose directly adverse law relevant to the court's previous decision to remand this case.

2. Plaintiff Jeffrey D. Dahl and Kristin L. Dahl, as Co-Trustees of the Dahl Family Revocable Trust, Dated September 27, 2019's motion for summary judgment, Dkt. 20, is GRANTED.

3. Defendant James DeBriyn's motion for summary judgment, Dkt. 8, is DENIED.

4. All pretrial deadlines and the trial date are STRUCK.

5. The parties have until August 8, 2025, to submit a joint proposed judgment, or alternative proposals along with short briefs explaining the parties' reasoning.

Entered July 18, 2025.

        BY THE COURT:

        /s/

        _____
        JAMES D. PETERSON
        District Judge