IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JEFFREY D. DAHL AND KRISTIN L. DAHL, AS CO-TRUSTEES OF THE DAHL FAMILY REVOCABLE TRUST, DATED SEPTEMBER 27, 2019, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES DEBRIYN, <br><br> Defendant. | Case No: 3:24-cv-336-jdp <br><br><br> DEFENDANT'S MOTION TO RECONSIDER THE COURT'S JULY 18, 2025 OPINION AND ORDER |

Defendant moves this Court for reconsideration of the Court's Opinion and Order, dated July 18, 2025, ECF No. 37 (the Court's "Opinion"). Defendant makes this motion pursuant to Federal Rule of Civil Procedure 54(b) and the Court's inherent authority.[1] Respectfully, Defendant moves for a this motion for reconsideration for two reasons: (1) While the Court's Opinion was decided based on the changed circumstances doctrine, the parties did not brief this doctrine, and critically, the Wisconsin Supreme Court explicitly rejected adoption of the changed conditions doctrine leaving in place the general rule that express easements cannot be unilaterally modified; and (2) because this doctrine was explicitly rejected, the purpose of an easement must be confined to the purpose as stated in the deed rather than uses that may have

---

[1] This motion is governed by Rule 54(b) and the Court's inherent authority. *See Caine v. Burge*, 897 F. Supp. 2d 714, 716 (N.D. Ill. 2012). Defendant acknowledges that "[a] party moving for reconsideration bears a heavy burden," and that "[i]t is well-settled that a motion to reconsider is not a proper vehicle to advance arguments or legal theories that could and should have been made before the Court entered its order or to present evidence that was available earlier." *Id.* As more fully described herein, Defendant believes the issues raised in this motion meet that burden.

1

been frustrated by changed circumstances. Defendant does not recite all the facts that have brought the parties to the current posture because the Court is already familiar.

### A. The Wisconsin Supreme Court Expressly Rejected Adoption of the Changed Conditions Doctrine in *AKG Real Est., LLC v. Kosterman*

In the Opinion, the Court found that "Wisconsin courts have repeatedly held that easements can be modified when reasonably necessary to accommodate changed circumstances." (Opinion at 14) This contrasts sharply with the express holding of the Wisconsin Supreme Court in *AKG Real Est., LLC v. Kosterman*, 2006 WI 106, which stated that "[g]iven the lack of consensus and lack of evidence that the changed-conditions doctrine produces superior economic and legal consequences, we reject the *Restatement*'s departure from the general rule that express easements cannot be unilaterally modified."[2] *Kosterman* at ¶ 39. In *Kosterman*, the court described the changed conditions doctrine and discussed adoption of the doctrine at length, ultimately rejecting adoption of the changed conditions doctrine reasoning that "the position articulated in *Restatement (Third) of Property: Servitudes* §§ 4.8(3) and 7.10(2) is inconsistent with longstanding precedent that Wisconsin courts do not balance the equities of adverse property owners when determining whether to grant or modify an easement." Defendant respectfully requests that the Court reconsider its Opinion in light of *Kosterman* and the Wisconsin Supreme Court's express rejection of the changed conditions doctrine.[3]

---

[2] This Court's Opinion also stated that, "Wisconsin courts [have not] adopted an exception to the modification rule preventing easements from being expanded." (Opinion at 15) *Kosternam* states that the opposite is true, namely that the general rule is that easements <u>may not</u> be unilaterally modified, and that absent the Wisconsin Supreme Court adopting a rule <u>allowing</u> easements to be modified, an easement may not be unilaterally expanded or otherwise modified. *See Kosterman* at ¶ 37.

[3] After *Kosterman*, the Wisconsin Supreme Court had the opportunity to confirm that it is the language in the deed, that determine the rights of the parties, writing "[p]arties who negotiate a deed granting an express easement expect courts to enforce its terms, which we conclude the law requires." *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶ 30.

2

Importantly, the parties did not brief the Court regarding the changed conditions doctrine. From Defendant's reading of the briefs, both parties focused primarily on the original intent of the parties. Defendant did not brief this doctrine because *Kosterman* directly rejected unilateral modification of easements due to changed circumstances.

In its Opinion, the Court cited four cases in support of finding that Wisconsin courts follow the changed conditions doctrine, but those cases did not adopt the changed conditions doctrine and must be read in harmony with the law as stated by the Wisconsin Supreme Court:

i. In *Scheeler v. David*, 256 Wis. 428, 41 N.W.2d 635 (Wis. 1950), the dominant owner was permitted to draw water from a shared well using an electric pump instead of a hand pump. *Id.* at 431. The court explained that "[t]is is not a case of the creation of a new right, or the extension of the terms of the easement. As we have pointed out, it is one of construction of the ambiguous terms of the grant." *Id.* at 431-32. To the extent *Scheeler* is in tension with *Kosterman*, the later decision of the Wisconsin Supreme Court in *Kosterman* would control.

ii. In *Atkinson v. Mentzel*, 211 Wis. 2d 628, 566 N.W.2d 158 (Wis. App. 1997). At the pincite in the Court's Opinion, *Atkinson* states that, "Changing needs of either owner may operate to make unreasonable a use of the way previously reasonable, or to make reasonable a use previously unreasonable." *Id.* at 640. This confirms that uses can vary, but changes in use do not operate to modify the easement. Instead, where the parties disagreed, *Atkinson* was decided based on the intent of the original parties as found in the language of the deed.

*Atkinson* involved an imprecisely defined easement with an ambiguous and disputed location which the trial court was then free to fix, and which the appellate court modified. One portion was relocated by the appellate court because the way was blocked by a water channel and the servient owner conceded that the alternate location was acceptable. *Id.* at 642-43. The next

3

portion was decided based on the plain language of the broadly stated purpose of the Easement in light of the original parties' intent.[4] *Id.* at 643. The final portion of the easement was expanded by the trial court to envelop additional areas of the servient property and the appellate court reversed this expansion because the easement already accomplished its stated purpose, despite being a "a broad grant of an access easement". *Id.* at 645-46. To the extent *Atkinson* is in tension with *Kosterman*, the later decision of the Wisconsin Supreme Court in *Kosterman* would control.

        iii.        In *Mnuk v. Harmony Homes, Inc.*, 2010 WI App 102, 790 N.W.2d 514. The court of appeals addressed a case where an easement called for a specific driveway to be constructed, but the parties agreed the driveway could no longer be constructed in the location specified by the agreement. *Id.* ¶¶ 8-10. While *Mnuk* does discuss modification of an easement when it is *impossible* for the easement to accomplish its stated purpose, this case does not involve unilateral modification of an existing easement. *Id.* ¶ 35. In *Mnuk*, the parties agreed on the purpose of the easement and that it had become impossible to accomplish that purpose. *Id.* ¶ 36, 39 ("In this case, it appears that neither party wishes the easements to remain valid and unmodified."). *Mnuk* considered whether the proper remedy was for the easement to be terminated or modified, and used reasoning found in the *Restatement* § 7.10(1) to conclude that modification was a less drastic remedy (although the court did not call for that remedy). *Id.* ¶ 36. *Mnuk* further cautions that "[i]t would be undesirable to give a broad interpretation to the phrase 'impossible as a practical matter to accomplish the purpose for which the [easement] was created.'" *Id.* ¶ 37 (quoting *Restatement (Third) of Property: Servitudes* § 7.10(1).

        In contrast to *Mnuk*, the parties in this case do not agree that existing Easement cannot accomplish the Easement's purpose of ingress and egress, Defendant does not want the Easement

---

[4] The court does not say so explicitly, but it was probably also relevant that this portion of the easement was along a vacated roadway, so there was likely readily apparent access when the easement was granted.

4

to be modified, and the evidence showed that the Easement is perfectly capable of fulfilling its stated purpose of ingress and egress to Plaintiffs' property. To the extent *Mnuk* is in tension with *Kosterman*, the Wisconsin Supreme Court's statement of the law in *Kosterman* would control over the opinion of the appeals court. *Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1221 (7th Cir. 1993).

        iv.        In the case of *In re Garza*, 2017 WI 35, 893 N.W.2d 1, the Wisconsin Supreme Court allowed a dominant utility company to replace wood transmission poles with a fewer number of steel poles. *Id.* ¶ 32. This was a change in use, not a modification to the boundaries of an easement. *See id.* ¶ 31. While the easement specified that the utility company would use wood poles, the court looked to the agreement to find that the original parties did not intend this as a limitation. *See id.* ¶¶ 24, 33. The court focused on the intent of the parties as stated in the written grant, whose language included the right to "operate an electric transmission line," clear trees within 40 feet, and "to do any and all other acts necessary in the proper erection, maintenance, safeguarding, and operation of said line." *See id.* ¶ 4-5. Also relevant, the court found that "[t]he change from wood to steel placed no undue burden on the servient estate." *Id.* ¶ 32, 39-40. In fact, the court noted that this change in use placed *less* burden on the servient property and noting that "steel poles do not occupy any additional space". *Id.* ¶ 32. *In re Garza* is not in tension with *Kosternam* or its rejection of the changed conditions doctrine because *In re Garza* concerns changing the use of an easement based on the original parties' stated intent, not expanding an easement based on changed conditions.

5

B. **Absent the Changed Conditions Doctrine, the Purpose of the Easement Must be Confined to the Purpose Found in the Plain Text of the Grant**

The Court's Opinion found that the reason for the Easement was to "maintain a suitable access route to a residential parcel." (Opinion at 13) While that language cannot be found in the deed, if the Wisconsin Supreme Court had decided to adopt the changed conditions doctrine, that doctrine could operate to preserve uses permitted by an easement when it was granted. *See Restatement (Third) of Property: Servitudes* § 7.10(2). Under the changed conditions doctrine, it could be argued that uses that were available historically, including conforming access to a residence, may be considered by courts to modify the easement. *See id.*

Given rejection of the changed conditions doctrine, the text of the Deed defines the purpose and use of the Easement. As stated by the Court in the Opinion, "[b]ecause an easement confers only limited property rights, the owner of the dominant estate must confine his use of the easement to the **purposes specified in the easement grant**…" (Opinion at 9-10, (citing *Grygiel v. Monches Fish & Game Club, Inc.,* 2010 WI 93) (emphasis added)) In this case, the language in the Deed does not preserve a right to construct a residence on the property or to make any other specific use of the property. *See, e.g., Grygiel* ¶ 34 (interpreting the use of an easement "for the purpose of ingress and egress as a means of access" as only "to access or to leave the [dominant estate]"). Because Plaintiffs may reasonably access their property using the Easement, the plain text of the purpose of the Easement has not been frustrated.

6

**Conclusion**

Defendant is aware of no case in Wisconsin history supporting unilateral widening of an express easement for ingress and egress. Just like the Wisconsin Supreme Court in *Kosterman*, this Court should not be "persuaded that the policy arguments are sufficiently compelling to justify overturning **more than a century of precedent and upsetting the settled expectations of thousands of easement holders**." *Kosterman* ¶ 39 (emphasis added). Because "Wisconsin courts do not balance the equities of adverse property owners when determining whether to grant or modify an easement," *id.* ¶ 37, Defendant respectfully requests that the Court reconsider its Opinion, and to the extent *Kosternan* does not resolve the remaining issues of this case, to order additional briefing as the Court determines would be helpful.

Respectfully, Defendant requests the following relief:

1. For the Court to reconsider the Court's Opinion in light of the Wisconsin Supreme Court's holding in *Kosterman*, rejecting the changed conditions doctrine.
2. Alternatively, for the court to order the parties additional briefing or oral argument to the Court on the issue of the changed circumstances doctrine (or any other issue that would be helpful to the Court) before entering final judgment in this case.

Dated this 23rd day of July, 2025.

Respectfully submitted,

 */s/ James DeBriyn*
James DeBriyn

7