UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

JEFFREY D. DAHL and KRISTIN L.
DAHL, as Co-Trustees of the Dahl Family
Revocable Trust, dated September 27, 2019,

                Plaintiffs,

   v.

JAMES DEBRIYN,

                Defendant.

Case No. 24-CV-336-jdp

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR RECONSIDERATION**

---

    Plaintiffs Jeffrey D. Dahl and Kristin L. Dahl, as Co-Trustees of the Dahl Family Revocable Trust, dated September 27, 2019 ("Plaintiffs" or "Dahls"), by their attorneys Reinhart Boerner Van Deuren s.c., submits this response in opposition to Defendant James DeBriyn's ("DeBriyn") Motion for Reconsideration of the Court's July 18, 2025 Opinion and Order. (ECF No. 37.)

**INTRODUCTION**

    In its summary judgment decision, this Court correctly held that the changes and improvements the Dahls seek to make to their ingress and egress easement – widening their current 10-foot dirt driveway – to comply with the Town of Cable's driveway ordinance were reasonably necessary to maintain a suitable access route to their residential parcel and that these changes would not impose an unreasonable burden on DeBriyn. (ECF No. 37, at 13-14.) The Court further held that the changes the Dahls sought to make to their easement would not expand the scope of

their easement rights beyond its stated purpose to provide ingress and egress to their property. (ECF No. 37, at 13.)

In his motion for reconsideration, DeBriyn now argues that this Court misapplied the changed conditions doctrine and committed an error of law by modifying the Dahls' ingress and egress easement.[1] (ECF No. 38, at 1.) This is incorrect.

First, the Court did not apply the changed conditions doctrine or modify the Dahl's easement. Rather, the Court's holding appropriately applied the general legal principle that changes to an easement are "allowed if it is reasonably necessary to accomplish the easement's purpose and does not unreasonably burden the servient estate." (ECF No. 37, at 15.) This holding is consistent with long-standing Wisconsin law on easements.

Second, DeBriyn overstates the Wisconsin Supreme Court's holding in *AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶ 20, 296 Wis. 2d 1, 717 N.W.2d 835, regarding the changed conditions doctrine and ignores subsequent Wisconsin case law that have applied that doctrine in cases more factually similar to this one. Even if the Court had applied the changed conditions doctrine, the undisputed facts and law would support its application in this case.

There was no manifest error of law made by this Court in its Opinion and Order. For the following reasons, this Court should deny DeBriyn's motion for reconsideration and enter the Dahls' proposed order for judgment.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), a court may revise any non-final order prior to entry of judgment adjudicating all of the claims in a case. Motions to revise an order under Rule

---

[1] DeBriyn does not move for reconsideration of the Court's holding that the changes the Dahls seek to make to their driveway easement would not constitute an unreasonable burden.

2

54(b) are subject to a standard that is very similar to the standard for motions to alter or amend a judgment under Rule 59(e): they should be granted only "to correct manifest errors of law or fact or to present newly discovered evidence." *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)); *Bullock v. Dart*, 599 F. Supp. 2d 947, 964 (N.D. Ill. 2009). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Motions for reconsideration also "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion." *Rothwell*, 827 F.2d at 251. "The nonmovant has an affirmative duty to come forward to meet a properly supported motion for summary judgment . . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time." *Id.*

## ARGUMENT[2]

### I. The Court Did Not Commit a Manifest Error of Law When it Applied Wisconsin's General Principles of Easement Law.

DeBriyn argues that the Court committed a manifest error of law by relying on the changed conditions doctrine, which DeBriyn asserts was rejected by the Wisconsin Supreme Court in *Kosterman*. DeBriyn is mistaken for two key reasons, which are explained below.

### A. The Court Correctly Applied Easement Principles Regarding "Right of Use."

First, as explained above, Wisconsin courts have long held that implied in every easement is the right to make changes or improvements to allow for the dominant estate to properly use and

---

[2] The Dahls will not repeat the undisputed facts from the parties' summary judgment briefing with which the Court is already familiar. (*See* ECF No. 28, at 4-9.)

3

enjoy their easement rights. *See, e.g.*, *In re Garza*, 2017 WI 35, ¶ 29, 374 Wis. 2d 555, 893 N.W.2d 1 ("We have long recognized that, implied in every easement . . . is the right of the [easement holder] to do what is reasonably necessary to enjoy the easement."); *Eilau v. Roff*, No. 2021AP396, 2022 WL 14177330, at *4 (Wis. Ct. App. Oct. 25, 2022) (unpublished) (stating general principle under Wisconsin easement law that an easement holder "*may make changes in* [*the*] *easement* for the purpose specified in [the] grant as long as the changes are reasonably related to the easement holder's right and do not unreasonably burden the servient estate." (quoting *Hunter v. Keys*, 229 Wis. 2d 710, 715, 600 N.W.2d 269 (Ct. App. 1999) (emphasis added)); *see also Scheeler v. Dewerd,* 256 Wis. 428, 432, 41 N.W.2d 635 (1950) ("It is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement."); *Eckendorf v. Austin*, 2000 WI App 219, ¶¶ 12-13, 239 Wis. 2d 69, 619 N.W.2d 129 (stating that the "purpose stated in the grant defines the easement's reasonable use" and that the easement holder "may determine how to use the land rights granted to them.").

Citing *Hunter v. Keys*,[3] the Court clearly applied this "right to use" principle in its decision and properly determined that "widening the driveway is reasonably necessary for the Dahls to enjoy their access easement and does not unreasonably burden DeBriyn's property." (*See* ECF No. 37, at 12-15.) The Court's holding is consistent with the legal standard concerning easement rights outlined in *Keys*:

> The owner of an easement *may make changes in the easement* for the purpose specified in the grant *as long as the changes are reasonably related to the easement holder's right* and do not unreasonably burden the servient estate. . . . [T]he grant of an easement for access and egress authorizes the easement holder to improve the roadway so as to facilitate access to his property, as long as the road improvements do not unreasonably burden the servient estate.

---

[3] Notably, DeBriyn does not cite to nor address the *Keys* decision in his motion for reconsideration.

4

*Keys*, 29 Wis. 2d at 715-16 (emphasis added).[4]

DeBriyn also cites *In re Garza*, 2017 WI 35, ¶ 29 (ECF No. 38, at 5), to support his argument that the Court misapplied Wisconsin easement law, but this case reaffirms that the Court in fact applied the correct legal standard in reaching its decision. *In re Garza* addressed and upheld the right of the dominant estate to change its transmission poles from wood to steel, despite express language in the easement to the contrary, and continued to allow the transmission company to come onto the servient estate to remove and trim trees affecting the transmission lines. 2017 WI 35, ¶ 43. There, the easement at issue specified that the transmission company could specifically erect "wood pole structures" and allowed the transmission company to come onto the servient estate to trim and maintain the lines. *Id.* ¶ 4. Thirty years after the easement was granted, American Transmission Company LLC ("ATC") changed out the wood poles with steel ones. *Id.* ¶ 7. The Garzas argued that this swap to steel poles was in violation of the plain language of the easement, meaning that ATC's easement terminated and ATC could not enter their property to trim and remove trees. *Id.* ¶ 2.

In its decision, the Wisconsin Supreme Court reaffirmed that every easement includes an implied right of the dominant estate to do what is reasonably necessary to enjoy its easement. Quoting the Restatement (Third) of Property: Servitudes § 4.10 (Am. Law Inst. 2000), the Wisconsin Supreme Court noted how a

---

[4] The Court's decision frequently uses the synonymous word "modify" interchangeably with "change" when describing Wisconsin law on easements. (*See, e.g.*, ECF No. 37, at 11-12 ("Under Wisconsin law, all easements contain an implied right to *modify* the easement in ways reasonably necessary to enjoy it for its intended use, as long as the deed does not expressly foreclose such *modifications* and the *modifications* will not unreasonably burden the servient estate." (emphasis added).) In context, the Court unmistakably applied the correct legal standard in reaching its decision concerning easements consistent with *Keys* and subsequent Wisconsin case law. Notwithstanding the absence of any legal error in the Court's summary judgment decision, the Court may consider amending its summary judgment decision under Fed. R. Civ. P. 54(b) for clarity.

> holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. *The manner*, frequency, and intensity *of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate* or enterprise benefited by the servitude.

*In re Garza,* 2017 WI 35, ¶ 29. The Court then reiterated how this right of use is not unlimited, as the dominant estate may not cause unreasonable damage to or place an undue burden on the servient estate. *Id.* ¶ 31 (citing Restatement (Third) of Property: Servitudes § 4.10 (Am. Law Inst. 2000)). Finding that the switch from wood poles to steel ones fell within ATC's right to do what is reasonably necessary to enjoy the right to use its easement, *In re Garza* held that the easement was not terminated after ATC's switch from wood to steel poles and allowed them to continue entering the servient estate to maintain its transmission lines.

*Keys* and *In re Garza*'s application of the "right to use" principle of easements is no different than the Court's application of that same principle in this case. Here, the Court determined that the Dahls' easement includes the implied right to change and improve their driveway to comply with the Town of Cable's driveway ordinance because the changes are reasonably related to their ingress/egress rights and that the changes would not impose an undue burden on DeBriyn's property. The Court also noted the undisputed fact that the Dahls' property, the dominant estate, is a residential property and that the Dahls cannot build a residence on their property until they can improve the driveway that overlaps with their easement for ingress and egress on DeBriyn's property. Certainly, the manner and intensity of the Dahls' use of their ingress and egress easement rights on DeBriyn's property will change to accommodate the normal development of their residential property and bring the driveway into compliance with the Town of Cable's ordinance regulating driveways. This is well within the implied rights granted by the Dahls' easement, which

is an *unrestricted* grant of an easement for ingress and egress. (*See* ECF No. 23-2 (conveying property "Together with an easement for ingress and egress to the above property").)

The Court applied the correct legal standard governing easements under Wisconsin law. Accordingly, DeBriyn's motion for reconsideration should be denied because the Court did not commit any manifest error in law.

### B. The Court's Decision Did Not Rely on or Cite the Changed Conditions Doctrine outlined in Restatement (Third) of Property: Servitudes §§ 4.8(3) or 7.10(2), which *Kosterman* Addressed.

The second reason DeBriyn's argument that the Court committed manifest legal error is mistaken is that the Court's decision was in no way predicated on the changed conditions doctrine addressed in *Kosterman*.

In its Opinion and Order, this Court noted that "Wisconsin courts have repeatedly held that easements can be modified when reasonably necessary to accommodate changed circumstances." (ECF No. 37, at 14 (citing *Scheeler*, 256 Wis. at 432; *Atkinson v. Mentzel*, 211 Wis. 2d 628, 640, 556 N.W.2d 158 (Ct. App. 1997); *Mnuk v. Harmony Homes, Inc.*, 2010 WI App 102, ¶¶ 36-40, 329 Wis. 2d 182, 790 N.W.2d 514; *In re Garza*, 2017 WI 35, ¶¶ 39-40).) DeBriyn argues that this one sentence in isolation shows that this Court improperly applied the changed conditions doctrine as described in *Kosterman*. Not so. As outlined above, this Court appropriately applied the general "right to use" principles of easements consistent with Wisconsin law. Moreover, nowhere does the Court's decision discuss, much less even mention, the changed conditions doctrine under Restatement (Third) of Property: Servitudes §§ 4.8(3) or 7.10(2) at issue in *Kosterman*.

It is also worth noting that the factual circumstances in *Kosterman* are nothing like the facts here. *Kosterman* addressed whether an easement benefiting a dominant estate could be unilaterally terminated or modified by *the servient estate* based on changed conditions without the dominant estate's consent. Here by contrast, the Dahls are *the dominant estate* who are *not* trying to relocate

7

or terminate their ingress/egress easement. Instead, the Dahls are seeking a declaratory judgment that their unrestricted ingress/egress easement grants them the right to make changes reasonably necessary to bring their driveway easement into compliance with the Town of Cable's ordinance.

Even if the one sentence DeBriyn seizes on in his motion somehow was an adoption and application of the changed conditions doctrine by this Court (it was not), DeBriyn's argument would still fall short. Several Wisconsin cases addressed and clarified *Kosterman*'s holding and allowed the application of the changed conditions doctrine under an impossibility analysis, as outlined in Restatement (Third) of Property: Servitudes § 7.10(1).

For example, the Wisconsin Court of Appeals addressed the scope of the *Kosterman* decision in *Mnuk*, 2010 WI App 102, ultimately allowing for a unilateral modification of an easement. There, the Mnuks held a dominant ingress/egress easement over a neighboring lot that was later purchased by Harmony Homes. *Id.* ¶¶ 7-8. Under the terms of this easement, the Mnuks had the right to use the driveway that Harmony Homes was to construct, and if they did not construct this driveway within a certain period of time, then the Mnuks could contract for the work and seek costs from Harmony Homes. *Id.* ¶ 8. Years later, Harmony Homes contacted the Mnuks about constructing a driveway pursuant to the easement agreement. *Mnuk,* ¶ 10. However, due to wetlands in the area, Harmony Homes and the Mnuks had to renegotiate a new location for the proposed driveway in order to avoid these wetlands, which they were unable to do. *Id.* Consequently, the Mnuks filed for a declaratory judgment, seeking to modify the easement based on the impossibility of building the driveway due to the existence of these wetlands. *Id.*

The Court of Appeals in *Mnuk* discussed the *Kosterman* decision at length. Citing how the Wisconsin Supreme Court had previously considered, and rejected *on the facts*[5], a landowner's

---

[5] *Mnuk* notes that the Wisconsin Supreme Court has explained that its "long-standing practice has been to review and decide whether to adopt sections from the Restatements on a case-by-case basis as [it] deem[s] it necessary." *Mnuk*,

8

claim for modification or termination of an express easement due to the impossibility of purpose, the Court of Appeals noted that *Kosterman* still "left open the question whether a court should apply Restatement (Third) of Property: Servitudes § 7.10(1) in a case where it is impossible to accomplish an easement's primary purpose." *Mnuk*, 2010 WI App 102, ¶¶ 26, 31. The Court of Appeals held that modifications of easements due to impossibility of purpose under Restatement (Third) of Property: Servitudes § 7.10(1) was appropriate under Wisconsin law, and remanded the case back to the circuit court to apply this impossibility analysis under section 7.10(1) and decide whether to modify or terminate the easement. *Mnuk*, 2010 WI App 102, ¶¶ 36, 41. The Court did not provide a definitive list of factors for the circuit court to use on remand when determining whether to modify or terminate the easement, but commented that two important factors would be the practicality to relocate the easement and how much additional land would be required to do so. *Id.* ¶ 40.

Five years later, *Mnuk's* reading of *Kosterman* was re-addressed and reaffirmed in *Muellenberg v. State Dept. of Transp.*, 2015 WI App 48, 363 Wis. 2d 582, 866 N.W.2d 746. There, the Wisconsin Court of Appeals confirmed that *Kosterman* did not address whether a court has the authority to modify an easement when fulfillment of its primary purpose has been rendered impossible, and upheld the circuit court's modification of the easement at issue in *Mullenberg*. *See id.* ¶¶ 22, 30, 34.

*Mnuk* and *Mullenberg* demonstrate that *Kosterman* was not, as DeBriyn argues, a universal ban on all easement modifications based on a change in conditions. Rather, Wisconsin courts interpreting *Kosterman* have allowed for modifications based upon an impossibility of purpose.

---

2010 WI App 102, ¶ 34 n.15 (alteration in original) (quoting *Behrendt v. Gulf Underwriters Ins.*, 2009 WI 71, ¶ 19 n.7, 318 Wis. 2d 622, 768 N.W.2d 568).

9

DeBriyn's argument would fail in any event under an impossibility analysis under Restatement (Third) of Property: Servitudes § 7.10(1). This section provides:

> When a change has taken place since the creation of a servitude that *makes it impossible as a practical matter to accomplish the purpose for which the servitude was created*, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable, or would not be effective, a court may terminate the servitude. Compensation for resulting harm to the beneficiaries may be awarded as a condition of modifying or terminating the servitude.

Restatement (Third) of Property: Servitudes § 7.10(1) (emphasis added).

Here, the undisputed facts on summary judgment show, and this Court found, that (1) the Dahl's parcel is zoned for residential use, (2) it has no other purpose other than as a residential property, (3) the current access route is unsuitable for a residential parcel because it does not comply with the town ordinance, and (4) the Dahls cannot currently obtain a permit to build a residence due to this noncompliance. (ECF No. 37, at 13.) This means that the purpose of the Dahls' easement, ingress and egress to their residential property, has been rendered practically impossible by the Town of Cable ordinance: there is no way for them to build a residence on their property without first complying with the Town of Cable's private road and driveway ordinance. Consequently, even if this Court had engaged in a changed conditions analysis, DeBriyn's arguments would still fail under section 7.10(1) as well as its applications in *Mnuk* and *Muellenberg*. There cannot be a manifest error in law if DeBriyn's newly raised argument would still fail, and his motion for reconsideration based on these grounds should be denied.

## II. This Court Already Considered and Rejected DeBriyn's Argument Regarding the Purpose of the Easement.

In his motion for reconsideration, DeBriyn also argues that the warranty deed defines the purpose and use of the easement and that the easement's purpose for ingress and egress has not

been frustrated. (ECF No. 38, at 6.) This Court already considered and rejected this exact argument in its Opinion and Order:

> "DeBriyn's view is that widening the driveway in this case is like installing utility cables in *Hunter*: it may be necessary for the Dahls to build a residence, which is what they want to do with the property, but it is not strictly necessary for ingress and egress, which is the sole purpose of the easement. The court disagrees."

(ECF No. 37, at 13.) This Court then went on to address how the Dahls are not attempting to expand the scope of their easement beyond ingress and egress but instead are merely trying to maintain a suitable access route to their residential parcel. (ECF No. 37, at 13.) Moreover and as noted above, the language of the easement itself places no restrictions on its grant of an easement for ingress and egress. Therefore, the Dahls have an unrestricted implied right to improve their driveway to facilitate ingress and egress to their property from the only accessible public road, East Cable Lake Road. *See Keys*, 229 Wis. 2d at 715 ("An unrestricted grant of an easement gives the grantee all rights that are incident or necessary to the reasonable and proper enjoyment of the easement." (citing *Scheeler*, 256 Wis. at 432)); *see also Eilau*, 2022 WL 14177330, at *5 ("Unless otherwise expressly limited by the text of the granting document, easements for ingress and egress allow for both vehicle and foot traffic.").

## CONCLUSION

DeBriyn has not shown nor provided any additional law that this Court wholesale disregarded, misapplied, or failed to recognize. *Oto*, 224 F.3d at 606. He simply does not like the Court's decision, which is not a proper argument on a motion for reconsideration. For all of the foregoing reasons, the Dahls respectfully ask that this Court deny DeBriyn's motion for reconsideration and enter the Dahls' proposed order for judgment reflecting this Court's July 18, 2025 decision.

Dated this 8th day of August, 2025.

/s/ James N. Law
James N. Law
WI State Bar ID No.: 1088047
jlaw@reinhartlaw.com
John Rejowski
WI State Bar ID No.: 1101411
jrejowski@reinhartlaw.com

Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414.298.1000
Facsimile: 414.298.8097

*Attorneys for Plaintiffs*
*Jeffrey D. Dahl And Kirstin L. Dahl, as Co-Trustees of the Dahl Family Revocable Trust, dated September 27, 2019*

54298633v2