IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JEFFREY D. DAHL AND KRISTIN L. DAHL, AS CO-TRUSTEES OF THE DAHL FAMILY REVOCABLE TRUST, DATED SEPTEMBER 27, 2019, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES DEBRIYN, <br><br> Defendant. | Case No: 3:24-cv-336-jdp <br><br> DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER THE COURT'S JULY 18, 2025 OPINION AND ORDER |

In *AKG Real Est., LLC v. Kosterman*, 2006 WI 106, ¶ 39, 717 N.W.2d 835, 847, the Wisconsin Supreme Court refused to "overturn[] more than a century of precedent" by "depart[ing] from the general rule that express easements cannot be unilaterally modified," however this Court's Opinion determined "that easements can be modified when reasonably necessary to accommodate changed circumstances." (Opinion, 14, ECF No. 37) These statements of the law are contradictory and the Court should find it concerning that no case in Wisconsin history has allowed a dominant owner to increase the established boundaries of an express easement.

In this reply, Defendant will address Plaintiffs' Opposition (ECF No. 39) while explaining that Plaintiffs are amalgamating two distinct lines of cases, leading to a chain of legal conclusions that are contrary to well-established Wisconsin law. Defendant will also address the new arguments Plaintiffs have raised for the first time in their opposition.

1

### A. The Court's Opinion Rests on Legal Principles Argued and Rejected in *Kosterman* because Wisconsin Courts Do Not Modify Easements Based on Changed Circumstances

Defendant respectfully believes the Court's statement of the law related to physical modification of written easements is contrary to well-established Wisconsin law as described in *Kosterman* and its line of cases.[1] In Plaintiffs' Opposition, they appear to concede that Wisconsin courts do not follow the changed conditions doctrine, but argue that the Court did not rely on the changed conditions doctrine in arriving at its legal conclusions. (Pls. Opp., 7-8, ECF No. 39) The only case Defendant could locate discussing modifications to easements based on 'changed conditions' or 'changed circumstances' was *Kosterman*, which rejected the changed conditions doctrine described in *Restatement*, while restating that Wisconsin courts do not modify written easements. *Kosterman*'s statement of the law is both controlling and dispositive on this issue.

The Court's opinion clearly balanced equities to arrive at its legal conclusions to find it had discretion to modify the Easement's boundaries. For example, the Court did not feel that enveloping additional land or removing "hundreds of trees" would be an unreasonable burden on Defendant's land because it would not "materially change the character" of Defendant's property and the road expansion would be a "substantial distance" from Defendant's present buildings. (Opinion, 13-14, ECF No. 37) These are equitable factors, but "Wisconsin courts do not balance the equities of adverse property owners when determining whether to grant or modify an

---

[1] Plaintiffs suggest that Defendant's request for reconsideration is simply manifested in disappointment in the result. (*See* Pls. Opp., 3, ECF No. 39) While Defendant admits he is disappointed in the result, Defendant also believes that the Court failed to recognize and apply the controlling precedent found in *Kosterman* and related cases regarding modification of written easements. Also, contrary to Plaintiffs' assertions, Defendant's motion does not introduce new evidence or new legal theories. The only new theories were introduced by Plaintiffs.

easement." *Kosterman* ¶ 37. In contrast, balancing equities is part of the changed conditions doctrine.[2]

Furthermore, the Court wrote that its ruling was "not based on the parties' intent, but on Wisconsin's rule for modifying easements based on changed circumstances." (Opinion, 16, ECF No. 37) As the Court correctly stated earlier in its Opinion, "the court interprets a deed to ascertain the intent of the parties who created it." (*Id.* at 10 (citing *Konneker v. Romano*, 2010 WI 65, ¶ 26, 785 N.W.2d 432, 441)) Defendant could not locate any legal doctrine other than the changed conditions doctrine that would allow a court to set aside *Konneker*'s statement of the law regarding the intent of the original parties in favor of unilateral modification of the physical dimensions of an easement by balancing the equities of the parties before the Court.[3]

The Court also wrote that, "[u]nder Wisconsin law, all easements contain an implied right to modify the easement in ways reasonably necessary to enjoy it for its intended use, as long as the deed does not expressly foreclose such modifications and the modifications will not unreasonably burden the servient estate." (Order, 11-12, ECF No. 37) This conflicts with the Wisconsin Supreme Court's statements in *Kosterman* that, "the general rule that express easements cannot be unilaterally modified" and also confirming that there is no implied right to modify written easements. *Id.* ¶¶ 34, 39 ("we conclude that parties need not include a provision in an express easement to prevent unilateral modification or relocation").

---

[2] Under the changed conditions doctrine, "[m]odification is appropriate, however, only if it does not materially increase the burden on the servient estate." *Restatement (Third) of Property (Servitudes)* § 7.10, cmt.a (2000). *Kosterman* rejects the introduction of a burden analysis for modification of written easements. *See Kosterman* ¶ 31.

[3] The *Restatement*'s "changed-conditions doctrine may be grounded in **implied intent** of the parties and public policy." *Restatement (Third) of Property (Servitudes)* § 7.10, cmt.a (2000) (emphasis added). Under this rejected rule, a court could give a remedy based on this 'implied intent' as opposed to the original parties actual intent as required under *Konneker*.

3

The Court also determined that the purpose of the Easement is to "maintain a suitable access route to a residential parcel," and used this expanded purpose to conclude that any modifications to the Easement would not be an unreasonable burden on Defendant's property. (Opinion, 13-14, ECF No. 37) The purpose of the Easement is stated in the grant unambiguously to provide "ingress and egress" to Plaintiffs' property. *See Kosterman* ¶ 23 (the "primary purpose" of an easement is found in the "plain text" of the grant); *see also Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶ 34, 787 N.W.2d 6, 17 (interpreting the use of an easement "for the purpose of ingress and egress as a means of access" meaning no more than "to access or to leave the [dominant estate]"). If the primary purpose written into the Easement guaranteed that Plaintiffs' property could be used to construct a residence, then perhaps the Easement would have contemplated future modifications to overcome the default rule that written easements are not subject to future modifications. Of course, the Easement does not contain any such language.[4]

For these reasons, and the legal conclusions that follow, Defendant respectfully believes that the Court erred because Wisconsin law does not give courts jurisdiction to modify a written easement based on changed circumstances or to expand the scope of the Easement's purpose to guarantee Plaintiffs' property may qualify for a building permit.

It is likely that Plaintiffs saw the same issues, so their Opposition responded by distinguishing *Kosterman* for the first time, and the introduced a brand new theory for modifying

---

[4] In *Grygiel*, the Wisconsin Supreme Court cautioned that courts need to be especially careful any burden analysis when interpreting written easements. *See Grygiel* ¶ 30 ("We agree that when faced with an express easement, a court's focus **should be on the language of the easement grant**, and not on the presence or absence of added burden, in determining whether certain conduct contravenes the terms of the express easement.") (emphasis added). While the Court used an expanded purpose of the easement to determine that widening the Easement placed no additional burden on Defendant's property, the Court should have focused on the words in the grant. In addition, as will be described in more detail, the burden analysis relates to how an easement is used *within* its grant, not whether its established boundaries may be modified.

4

a written easement; but as will be shown, Plaintiffs cannot overcome the default rule that written easements are not subject to unilateral modification by either party. Defendant respectfully requests that the Court reconsider its Opinion because Wisconsin law is contrary to the reasoning and the relief granted therein.[5]

### B. Plaintiffs Misinterpret the Cases Concerning the Manner Frequency and Intensity of Use as Authorizing Modification of the Easement Itself

Plaintiffs' Opposition cites a list of cases in support of what Plaintiffs now describe as "right of use." (Pls. Opp., 3-7, ECF No. 39) None of these cases support modification of the physical dimensions, location, or written purpose of an easement. As can be seen from Plaintiffs' own parentheticals, these cases determine the permissible uses *within* an easement's grant.[6] *See In re Garza*, 2017 WI 35, ¶ 29, 893 N.W.2d 1, 7–8 ("The **manner**, frequency, and intensity **of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate** …") (emphasis in original) (*quoting Restatement (Third) of Property: Servitudes* § 4.10); *see also Scheeler v. Dewerd*, 256 Wis. 428, 432, 41 N.W.2d 635, 637 (Wis. 1950) (allowing the change in *manner* of use of well facilities from hand pump to electric pump); *see also Eckendorf v. Austin*, 2000 WI App 219,

---

[5] Plaintiffs did not plead for modification of the Easement. Plaintiffs asked for a declaration of rights under the existing grant. The Court has the power to grant additional relief, but until now, Plaintiffs had not made any argument that addressed the controlling precedent of *Kosterman*. (*See* Pls. Opp., 8-10, ECF No. 39 (arguing for the first time that *Kosterman* can be distinguished and the default rule may be overcome based on the concept of impossibility)). *See also Ray v. Raj Bedi Revocable Tr.*, 611 F. Supp. 3d 567, 582 (N.D. Ind. 2020) ("The purpose of the Declaratory Judgment Act is to declare rights that exist, not to make new ones.")

[6] Plaintiffs support amendment of the Court's Opinion based on the Court's use of the word "modify" as compared to "change." (*See* Pls. Opp., n.4, ECF No. 39) Defendant agrees that this is important, but Defendant seeks to explain that *changes in use* of an easement are materially different from *modifications* that would rewrite the legal description of an easement.

5

¶ 12, 619 N.W.2d 129, 132 (dominant owners may use easement for access and laying sewer lines, but must be stay *within* existing 30 foot wide easement).

The Court's Opinion also stated that *Hunter v. Keys* was instructive, and Plaintiffs' Opposition discussed this case, but *Keys* did not modify the existing easement. Instead, *Keys* concerns how the dominant owner was permitted to use the two-rod wide easement granted in the deed. *Hunter v. Keys*, 229 Wis. 2d 710, 715, 600 N.W.2d 269, 272 (Wis. Ct. App. 1999) ("Keys' two-rod easement over Hunter's property for access and egress gives Keys a permanent interest in a two-rod parcel for the purpose identified in the deed—access and egress."). The dominant owner was allowed to build a road at the location described in the grant but was required to stay within the easement's physical dimensions. *See id.* ("The owner of an easement may make changes **in** the easement") (emphasis added). *Hunter* concerns the dominant owner's use *within* the physical dimensions of an easement, and did not suggest that the easement could be modified if such use was restricted by law. *See id.* at 717. ("The wetlands are **within the prescribed easement** which is created for the purpose of access and egress. The filling in of the wetlands is consistent with the improvement of the roadway, which is within the scope of the easement granted to Keys, **to the extent Keys complies with any applicable wetlands regulations**.") (emphasis added) *Hunter* determined permissible uses *within* the easement - and did not address any modifications to the easement, or suggest modification was a possibility.[7]

---

[7] Plaintiffs Opposition cited, *Eilau v. Roff*, 2022 WI App 57, ¶ 14, 983 N.W.2d 218, 2022 WL 14177330 (unpublished), as legal precedent, but only used *Eilau* to quote *Keys*' statements that changes in use must occur *within* the easement. (Pls. Opp., 4, ECF No. 39) While *Eilau* should only be cited for persuasive authority, that case focused on the intent of the parties regarding how the easement may be used. *Id.* ¶ 2. While there was also a portion of the easement that did not yet have a road due to a barrier, the court determined that "the width of the Easement's road must be as wide as the [existing] roadway, as determined by [the servient owner], unless the roadway is not wide enough upon which a vehicle may drive." *Id.* ¶ 21. This case supports Defendant's position, not Plaintiffs'.

*In re Garza*, is also helpful in illustrating this critical difference between 'uses' of an easement compared to 'modifications' to an easement. Plaintiffs incorrectly characterize this case as a case modifying the purpose of a written easement. (Pls. Opp., 5-6, ECF No. 39). *In re Garza* addressed a proposed change in the *manner* of the dominant owner's use of the easement. *See In re Garza* ¶¶ 29-31 (allowing electrical transmission poles to be changed from wood to steel). As it related to this manner of use, the court found that "[t]he change from wood to steel placed no undue burden on the servient estate" because the change required fewer poles and the steel poles "were also constructed **within the boundary** established by the 1969 easement, which means the steel poles **do not occupy any additional space**." *Id.* ¶ 32 (emphasis added). This implies that if steel poles did take up more space, or if there were more of them, the change in use would have been rejected by the court. Plaintiffs also allude to the dominant owner's right to clear trees and brush within 40 feet of either side of the easement (likely because that is similar to what they want to do in this case), but that was a right explicitly granted under the terms of the easement. *In re Garza* ¶ 5. This case stands for the proposition that the *manner* of use may change, so long as the new manner of use does not increase the burden or change the boundaries of the easement.[8]

---

[8] The *In re Garza* court found support in an Iowa case in which an easement specified that ingress and egress would be by "team and wagon," but nevertheless allowed the dominant owner to alter the method of use to include automobiles. *Id.* ¶ 29.

Plaintiffs may use the Easement to access their property for a wide variety of purposes,[9] but, none of Plaintiffs' "right of use" cases authorize modification of an easement's physical dimensions, location, or stated purpose. Instead, they describe what the stated purpose allows the dominant owner to do *within* the existing easement by evaluating the burden on the servient estate from the change in manner, frequency, and intensity. Actual modifications of written easements are addressed by a separate line of cases - including *Kosterman*.

### C.  *Kosterman* States the Well-Established Rule that Written Easements May Not be Modified by Either Party

When it comes to actually modifying a written easement, such as changing its physical dimensions, location, or written purpose, *Kosterman* restates "the general rule that express easements cannot be unilaterally modified" and "that parties need not include a provision in an express easement to prevent unilateral modification or relocation." *Kosterman* ¶¶ 34, 39. At a minimum, this shifts the burden of persuasion to Plaintiffs to show why the general rule should not apply. Plaintiffs' Opposition makes this argument for the first time in two ways, first by distinguishing *Kosterman* (but none of the rest of its line of cases) and second by putting forth a new theory that was rejected in *Kosterman* - 'impossibility.'

Plaintiffs attempt to distinguish *Kosterman* on its facts because in *Kosterman* the servient owner was attempting to modify the easement, not the dominant owner like this case. (Pls. Opp.,

---

[9] The Court noted that "neither side asserts that [Plaintiffs' property] has any purpose other than as residential property." (Opinion 13, ECF No. 37) While Defendant cannot conceive of every possible use of Plaintiffs' property, there is no doubt that it can be used for a wide variety of purposes, consistent with applicable laws. (*See* ECF No. 1-5 (stating that Plaintiffs' property is suitable for camping, fishing, and general recreation)) Nevertheless, the inquiry is not how Plaintiffs want to use their own property, but rather how they are permitted to use Defendant's property under the easement. *See Keys* at 717-18 (denying installation of utilities within the easement even though the dominant owner claimed that "the utility installation is necessary for his enjoyment of his land"). While Plaintiffs' Easement would permit use as access to a residence, such use must be confined within the boundaries of the existing Easement.

8

7-8 ECF No 39) Plaintiffs imply that the general rules stated *Kosterman* are limited to modifications by the servient owner, but that is an unreasonably narrow reading of *Kosterman* that ignores broad statements of the law and ignores the rest of this entire line of cases. For example, while *Kosterman* arose because the servient estate sought to modify or terminate a written easement, *Kosterman* cites *Lehner* and *Guse*, which are both cases where the dominant owner wanted to modify a written easement, but Wisconsin Supreme Court followed the common law rule that is would not modify the easement. *See Lehner v. Kozlowski*, 245 Wis. 262, 266, 13 N.W.2d 912 (Wis. 1944) ("The rule is well settled that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the rights, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it had been enjoyed.") (citation omitted); *see also Guse v. Flohr*, 195 Wis. 139, 147-48, 217 N.W. 730 (Wis. 1928) ("The [dominant owners] cannot diverge from the way as described in the instrument creating it, or change its location, merely because their needs are different to–day than they were 75 years ago, when the easement was created … the [servient owner] is not obliged to give his consent [to widen and improve the easement]").[10] Even if *Kosterman* could be distinguished, *Guise* and *Lehner* require the same result.

The refusal to modify easements is not limited to the cases cited in *Kosterman*. *See Lindokken v. Paulson*, 224 Wis. 470, 272 N.W. 453, 456 (Wis. 1937) (explaining that widening

---

[10] In its Opinion, the Court distinguished *Northwest Pipeline Corp. v. Luna*, 241 P.3d 945 (Idaho 2010) on the grounds that "Wisconsin courts have not adopted the rule that easements must be construed based on the 'circumstances in existence at the time the easement was given,'" (Opinion, 14, ECF No. 37), but *Guse*, cited with approval by *Kosterman* explicitly interpreted the easement based on the circumstances from the time the easement was granted, 75 years earlier. *Guse* at 147-48; *see also Joseph Mann Libr. Ass'n v. City of Two Rivers*, 272 Wis. 441, 446, 76 N.W.2d 388, 391 (Wis. 1956) ("Deeds are construed as are other instruments. They speak as of the time of execution and delivery").

9

an easement would be an invasion of the servient owner's rights and a hostile act in the context of adverse possession); *see also Reise v. Enos*, 76 Wis. 634, 45 N.W. 414, 415 (Wis. 1890) ("it is well settled that, if a person has a right of way over the land of another to a particular close, he cannot enlarge it or extend it to other closes"); *see also Berg v. Ziel*, 2015 WI App 72, ¶ 16, 21, 870 N.W.2d 666, 673 (finding the "easement's location-like the access road itself—was long ago set in stone"); s*ee also 28A C.J.S. Easements* § 232 (2024) (stating the common law rule that "[t]he owner of an easement may not expand the physical size, purpose or use of the easement beyond the terms as contained in the original grant, as any such attempt by the easement owner unduly interferes with the reserved rights of the owner of the servient tenement.").

The Court and the parties all agree that the Easement's location and purpose are defined by the written grant. In addition, the Court appears to have correctly found that the Easement's width is 10 feet as set by the original parties and the existing road. (*See* Opinion, 10 ECF No. 37) Unless an exception to the general rule against modification of easements applies, the Court has jurisdiction to conclusively determine the width of the existing Easement based on the intent of the original parties, and to determine Plaintiffs' permissible uses within the Easement, but *Kosterman* follows the well-settled rule that courts acting under Wisconsin law do not modify the Easement itself, namely an easement's width, location, or written purpose. *See, e.g., Berg* ¶ 17 ("the trial court could not relocate the easement from the established access road").

### D. For the First Time, Plaintiffs Argue that the Easement Should be Modified Under the Doctrine of Impossibility

For the first time, Plaintiffs' Opposition argues that the Easement may be modified under the doctrine of impossibility. (Pls. Opp., 8-10, ECF No. 39) *Kosterman* rejected the invitation to modify easements based on impossibility. *Kosterman* ¶ 21. Justice Bradley's concurrence in

*Kosterman* suggested that the Supreme Court may revisit the *Restatement* to terminate a written easement based on impossibility in a future case. *Kosterman* ¶¶ 57, 59 (Bradley, J., concurring). Justice Bradley gave her thoughts on how the court might approach the issue, writing:

> In a future case, when impossibility is an issue, this court may well consider whether an express easement could be terminated when the purpose becomes impossible to accomplish. Impossibility is a high standard when properly defined. Such a standard, nevertheless, would address the argument that a servient estate should not be bound in perpetuity when the purpose of the easement is impossible to achieve. The impossibility standard may provide an appropriate balance between the respective rights and interests of the dominant and servient estates.
> *Id.* ¶ 60.

Nevertheless, Justice Bradley cautioned that because the easement in *Kosterman* "is an express easement granted 'for purposes of ingress and egress'" and that "[i]t still can be, and is, used for these purposes," … "this case does not involve the concept[] of impossibility." *Id.* ¶ 57. Therefore, even under Justice Bradley's formulation, if the Easement can be used for its written purpose (here, ingress and egress), the concept of impossibility would not apply, so the Easement could not be terminated. Furthermore, Plaintiffs are not suggesting termination of the Easement.

Plaintiffs' Opposition describes four "undisputed facts" needed to arrive at the conclusion that without modification the purpose of the Easement is "practically impossible" to accomplish. (*See* Pls. Opp., 10, ECF No. 39) None of these "facts" are grounded in the Easement's written purpose of providing ingress and egress to their property. Instead, Plaintiffs are just describing their desire to develop their own property, and the changed conditions that they feel justify the equitable remedy of modification to envelop Defendant's property. *But see Kosterman* ¶ 21 (dismissing the argument that changed conditions may lead to impossibility of purpose and then rejecting the *Restatement*'s view on either changed conditions *or* impossibility). Plaintiffs' formulation of 'impossibility' is in direct conflict with *Kosterman* because their argument essentially just restates the rejected changed conditions doctrine.

Plaintiffs rely on *Mnuk* and *Muellenberg* decided by the appeals court after *Kosterman* as "ultimately allowing for a unilateral modification of an easement." (Pls. Opp., 8, ECF No. 39). *Mnuk* did not involve "unilateral modification" because *Mnuk* was a case where both parties agreed that the "primary purpose" of the easements had become impossible to accomplish and neither party wanted the easements to remain unchanged. *Mnuk v. Harmony Homes, Inc.*, 2010 WI App 102, ¶ 39, 790 N.W.2d 514, 525. In *Mnuk*, the the parties held reciprocal easements (each party was both a dominant and a servient owner) that called a joint driveway to be built by one party at a specific location, but due to the passage of time and a wetlands designation, the driveway could no longer be constructed at the location described in the grant. *Id.* ¶¶ 5-10. One party asked the court to follow the common law rule to terminate the easements and to be relieved of the obligation to construct the driveway, while the other party asked for the easements to be modified. *Id.* ¶¶ 38-39 ("In this case, it appears that neither party wishes the easements to remain valid and unmodified.").[11] In this special case where both parties appear to have waived the general rule, *Mnuk* also contemplated an award of compensation. *Mnuk* ¶ 41.[12]

---

[11] As Plaintiffs pointed out in their opposition, the Wisconsin Supreme Court determines which provisions of the *Restatement* to adopt. (Pls. Opp., n.8, ECF No. 39 ) The Wisconsin Supreme Court has not adopted the *Restatement*'s position on changed circumstances or impossibility of purpose. *See Kosterman* ¶ 21 ("We conclude that the easements should not be modified or terminated under Restatement (Third) of Property: Servitudes § **7.10(1) or (2)**.") (emphasis added); *see also Kosterman* ¶ 60 (Bradley, J., concurring) (suggesting that "**this court**" may consider impossibility in a future case) (emphasis added). Furthermore, *Mnuk* even cautioned that "[i]t would be undesirable to give a broad interpretation to the phrase 'impossible as a practical matter to accomplish the purpose for which the [easement] was created.'" *Mnuk* ¶ 37 (quoting *Restatement (Third) of Property: Servitudes* § 7.10(1)).

[12] To the extent *Mnuk* is in tension with *Kosterman*, which is only true under Plaintiffs' erroneous reading, the Wisconsin Supreme Court's statement of the law in *Kosterman* rejecting modification under the *Restatement* would control over the opinion of the appeals court. *See Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1221 (7th Cir. 1993).

Plaintiffs also cite *Muellenberg* as a case that supports modification of written easement due to impossibility. (Pls. Opp., 9, ECF No. 39) In *Muellenberg* the Department of Transportation bought land partially encumbered by an easement that did not connect to a public road and the Department used its statutory authority to remove and relocate the access that led from the public road to the easement (the easement did not connect to a public road). *Muellenberg v. State Dep't of Transp.*, 2015 WI App 48, ¶¶ 3-9, 866 N.W.2d 746, 748-49. Like *Mnuk*, this was not a case of unilateral modification because "the parties agreed that the Easement as originally situated was no longer usable." *Id.* ¶ 22. In *Muellenberg*, the Department had statutory authority to terminate the driveway that was not part of the easement, and the court allowed substitute access proposed by the Department to serve as access from the public road to the easement. *Id.* ¶ 30. Due to the Department's statutory authority, *Muellenberg* is more closely related to a condemnation case than an easement dispute between two private parties.

While impossibility under *Mnuk* and *Muellenberg* was limited to cases where the parties agree the written purpose of the easement has been rendered impossible, and where the parties were both asking the court to exercise jurisdiction to provide a remedy, this case does not even involve actual impossibility. In this case, the primary purpose of the Easement is unambiguously stated in the grant as to provide "ingress and egress" to the Plaintiffs' property. Impossibility would be determined based on whether the Easement provides access to the Plaintiffs' property. *See Kosterman* ¶ 23 ("The plain text of the 1961 instrument creates 'an ease[ment of right of way] *for purposes of ingress and egress*....' That valid purpose has not been extinguished, frustrated, or otherwise rendered impossible to fulfill.") (emphasis in original). No evidence in this case indicates that the written purpose of the Easement is impossible to accomplish. To the contrary, Plaintiffs admitted that they have access to their property using the Easement's existing

13

Case: 3:24-cv-00336-jdp Document #: 44 Filed: 08/18/25 Page 14 of 16

width. (Admissions of Jeffrey Dahl ¶¶ 21-22, ECF No. 11-14; Admissions of Kristin Dahl ¶¶ 21-22, ECF No. 11-14) It is also clear that this is not a case where either party could fairly argue that the Easement should be terminated - which is the only time the law would even contemplate modification due to impossibility.

For Plaintiffs to succeed, they would have to prove that the primary purpose of the Easement was to specifically guarantee that the dominant property would perpetually meet all development restrictions to build a residence (and to admit that termination of their easement is a reasonable outcome). Nevertheless, there is no evidence that the original parties intended a "primary purpose" of the easement other than what is found in the "plain text" of the grant. *See Kosterman* ¶ 23. To hold otherwise would be to modify and expand the written purpose of the Easement to manufacture an argument for impossibility. *But see Kosterman* ¶ 21.

In this case, Plaintiffs' complained 'impossibility' is not based on the easement's grant (Plaintiffs can, in fact, access their property), but rather based on Plaintiffs' intended use of the property (Plaintiffs cannot obtain a building permit to construct a residence). This case is identical to the situation Justice Bradley warned would "not involve the concept[] of impossibility." *See Kosterman* ¶ 57 (Bradley, J., concurring) (discussed *supra*). Without a valid basis in the law to follow the *Restatement*'s formulation of unilateral modification due to impossibility, or facts that would support such a finding, this case falls squarely back into the holding of *Kosterman* which reaffirmed "more than a century of precedent" by refusing to allow either party to unilaterally modify a written easement. *See Kosterman* ¶¶ 18, 21, 39 (**rejecting** the *Restatement*'s proposition that "[i]f the purpose of a servitude can be accomplished, but because of changed conditions the servient estate is no longer suitable for uses permitted by the

14

servitude, a court may modify the servitude to permit other uses under conditions designed to preserve the benefits of the original servitude.").

The Court should not forget that Defendant also has the right to maintain his own property without interference, and that by widening the Easement, the Court would take a substantial amount of land from Defendant and give control of that land to Plaintiffs - a first in Wisconsin law. Again, Defendant's own desires for use of his property outside the boundaries of the existing Easement should not be weighed against Plaintiff's desire to cause destruction of Defendant's property to support their own use of their property. *See Kosterman* ¶ 37 ("Wisconsin courts do not balance the equities of adverse property owners when determining whether to grant or modify an easement.").

**Conclusion**

One line of cases discusses how Wisconsin courts approach changing uses of an easement and the other line of cases discusses modifying an easement itself. In short, the general rule is that dominant owners may change how they use an easement over time (manner, frequency, and intensity), but they are not permitted to modify the easement itself (location, dimensions or stated purpose).

Returning to the central issues of this case, Plaintiffs may change their use of the existing Easement as access to a residence. This is permitted because Plaintiffs may vary the manner, frequency and intensity of their use so long as their use does not increase the burden on Defendant's land. Also, Plaintiffs may not modify the dimensions, location, or purpose of easement, because neither party may modify the written easement, and there is no exception to that rule that has been accepted by the Wisconsin Supreme Court and applies here. Plaintiffs

15

conflate the issues and cases by taking their otherwise permissible use (access to a residence) and argue that if they can't construct a residence without modifying the existing easement, the law should allow them to modify the Easement. *See Kosterman* ¶ 21 (rejecting this logic).

    In this case, *Kosterman* is controlling. Tellingly, Plaintiffs cannot provide a single case where a Wisconsin court widened an existing written easement or put forth a compelling argument for this Court to be the first in Wisconsin history to do so. While Plaintiffs are content with the Court's Opinion and Order, respectfully, Defendant believes that the Court erred in concluding that courts applying Wisconsin law may modify the physical dimensions or location of written easements based on changed circumstances Similarly, the Court erred in finding that the purpose of the Easement is anything more than what is stated in the plain text of the deed and using that purpose justify modification of the Easement.

    Respectfully, Defendant requests that the Court reconsider the Court's Opinion and Order, and allow additional briefing or oral argument as the Court believes would be beneficial before entering final judgment in this case.

    Dated this 18th day of August, 2025.

                                             Respectfully submitted,

                                                      */s/ James DeBriyn*
                                                      James DeBriyn